# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.C. and A.B.C.<br>  Plaintiffs,<br><br>v.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT,<br><br>  Defendant. | Case No.: 8:17-cv-01460-JLS-KES<br><br>**JUDGMENT** |

Plaintiffs A.C. and A.B.C.[1] filed this action for administrative review pursuant to 20 U.S.C. § 1415(i)(2)(A) against Defendant Capistrano Unified School District, challenging an Administrative Law Judge's decision. (Compl. ¶¶ 23–26, 32–34, Doc. 1.) This lawsuit follows Plaintiffs' exhaustion of administrative remedies.

The parties have filed cross motions for judgment pursuant to Federal Rule of Civil Procedure 52.[2] The Court has considered the parties' Motions for Judgment, their Opposition briefs, and the Administrative Record filed by Defendant. (*See* Doc.

---

[1] A.B.C. is identified as a student and A.C. as her father. (Compl. ¶ 2.) The Court granted Plaintiff's Application for Use of Pseudonyms, ordering that Plaintiffs would be identified only by use of their initials in all documents related to this matter. (Order, Doc. 12.)

[2] Plaintiffs' Opening Brief, Doc. 32; Defendant's Opening Brief, Doc. 31; Plaintiffs' Responsive Brief, Doc. 38; Defendant's Responsive Brief, Doc. 37.

49.)[3] As set forth more fully below, the Court AFFIRMS the Administrative Law Judge's decision that the 2016 individualized education plan ("IEP") offered a free appropriate public education ("FAPE"), but REMANDS for a determination of a specific amount to reimburse Plaintiffs for transportation costs.

## I. STATUTORY AND REGULATORY BACKGROUND

The Individual with Disabilities Education Act ("IDEA") grants federal funds to state and local agencies to provide a special education to children with disabilities. 20 U.S.C. § 1412(a). The purpose of the IDEA is, among other things, to provide all children with disabilities "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).

The IDEA requires that states receiving federal education funding provide a "free appropriate public education . . . to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1). It also establishes procedures for creating an individualized education program, or IEP, which is a written statement of present levels of academic achievement and functional performance and goals in those areas. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(II). The IEP must also include "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child" and "a statement of the program modifications or supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

A parent of a child with a disability who alleges a violation of the IDEA may present a complaint setting forth the allegation. 20 U.S.C. § 1415(b)(6). The "parents or the local educational agency involved in such complaint" proceed to a due process hearing. 20 U.S.C. § 1415(f). In California, such hearings are heard before an Administrative Law Judge ("ALJ") through the Office of Administrative Hearings. A

---

[3] To avoid confusion, all citations to documents contained within the Administrative Record shall cite to the page numbers assigned to the administrative record rather than assigned by the ECF docketing system to Doc. 49 or to the pagination of the individual documents.

party aggrieved by the hearing officer's determination in a due process hearing may appeal such decision to a federal district court. 20 U.S.C. § 1415(i)(2)(A). A reviewing court is instructed to "receive the records of the administrative proceedings"; "hear additional evidence at the request of a party"; and, "basing its decision on the preponderance of the evidence . . . grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)-(iii). The burden of proof rests with "the party challenging the administrative decision." *Hood v. Encinitas Union School Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007.)

## II. BACKGROUND

### A. Factual Background

The decision below contains detailed factual findings. (Pasewark Decision, Administrative Record at 461–92.) In large part, the parties do not dispute the factual background as set forth in the decision. Accordingly, the Court relies upon those facts to provide context for its decision.

A.B.C., who was adopted in 2001, sustained a traumatic brain injury due to abuse from her biological parents. (*Id.* at 463.) The brain injury caused A.B.C. to experience cognitive delay, impulse control deficits, and an inability to self-soothe. (*Id.*) In particular, her mother described her as "very verbal, and competent with spoken language." (*Id.*) However, she could become violent when stressed and was "very immature." (*Id.* at 463–64.) A.B.C. attended a Waldorf elementary school. (*Id.* at 463.)

In 2013, A.B.C. enrolled in a District school, Shorecliff, for eighth grade. (*Id.* at 464.) Her mother provided the District with significant information about A.B.C.'s medical history and related information, and requested an assessment for special education and related services. (*Id.*) On October 25, 2013, the District held an initial IEP meeting and found A.B.C. ineligible for special education services. (*Id.*) A.B.C.'s mother explained that A.B.C. became "stressed" at Shorecliff and failed to attend school for days, if not weeks, at a time. (*Id.* at 465.) Ultimately, A.B.C.'s

3

parents disenrolled her from Shorecliff in late January 2014. (*Id.*) She returned to the Waldorf school to complete the school year. (*Id.* at 466.)

A.B.C. began attending the New Vista School, a private school, in the summer of 2015. (*Id.* at 463, 466.) The school primarily served students with specific learning disabilities and high-functioning autism. (*Id.* at 466.) A.B.C.'s mother described her transformation at New Vista as "amazing." (*Id.*) New Vista ultimately informed A.B.C.'s parents that she would need additional time beyond the 12th grade to obtain a high school diploma. (*Id.* at 467.) At that time, at the suggestion of New Vista staff, A.B.C.'s parents requested an IEP from the District. (*Id.*)

In spring 2016, the District conducted a "triennial assessment" of A.B.C, including medical and educational history, a review of a prior neuropsychological assessment, standardized testing, and observation of A.B.C. in various settings. (*Id.* at 468.) An IEP team meeting was held on June 3, 2016 to review the assessments and develop and provide the IEP. (*Id.* at 473.) A.B.C.'s parents and her attorney participated in the meeting, as did representatives from the District and teachers from New Vista. (*Id.*) The IEP team developed twelve goals for A.B.C. (*Id.* at 474.) These included specific academic goals for math, writing, and reading fluency along with study and behavior goals. (*Id.* at 475.) The team also created accommodations for A.B.C., including additional time to turn in assignments, to study, and for tests, breaks as needed, preferential seating, and repetition and clarity in directions. (*Id.* at 477.)

The District identified its Bridges program as an appropriate placement for A.B.C. (*Id.* at 479.) The program included full-day academic instruction in a small classroom setting, along with weekly individual counseling. (*Id.*) It used routines and schedules aimed at assisting students to learn to manage their own behavior and academic progress. (*Id.* at 478.) It also had a tiered behavioral intervention support plan. (*Id.* at 479.)

A.B.C.'s parents agreed to observe the Bridges program. (*Id.*) Both expressed

concerns. Her mother worried that A.B.C. would refuse to attend the program. (*Id*. at 480.) A.C. was concerned about the maturity level of the other students in the program. (*Id*.) On June 8, 2016, A.B.C.'s parents notified the District in writing that they did not believe the IEP offered a FAPE and instead would privately place A.B.C. at New Vista and seek reimbursement for the associated costs. (*Id*. at 480.) The District offered A.B.C.'s parents another IEP team meeting, but A.B.C.'s parents instead enrolled her at New Vista for the 2016-2017 school year. (*Id*.)

### B. Procedural History

A.B.C. and her parents filed a Due Process Complaint with the Office of Administrative Hearings, Special Education Division on October 2, 2016. (*Id*. at 1.) Administrative Law Judge Pasewark conducted hearings that spanned over three days: March 28, 29, and 30, 2017. (*Id.* at 461.) She issued a decision on May 25, 2017. (*Id*. at 492.) The decision presented ALJ Pasewark's determination of three issues: (1) "[d]id [the] District fail to fulfill its child find obligation[4] for the 2014-2015 and 2015-2016 school years?"; (2) "[d]id [the] District fail to convene an individualized education program team meeting for Student and provide an offer of free appropriate public education for the 2014-2015 and 2015-2016 school years?"; and (3) "[d]id [the] District fail to provide an appropriate offer of FAPE at the June 6, 2016 IEP team meeting?" (*Id*. at 462.) She found in favor of A.B.C. on the first two issues. (*Id*. at 485, 486.) She found for the District on the third issue, writing that Bridges represented the "least restrictive environment" for A.B.C. and that it was an "appropriate placement" in that it offered A.B.C. "appropriate and sufficiently challenging goals" and "the added and needed supervision of a small, structured classroom, and mental health professionals to implement behavior and emotional

---

[4] Because the District is "a state entity receiving assistance under the IDEA," it "has an obligation to identify, locate, and evaluate all students with disabilities in its boundaries." *See J.K. v. Missoula Cty. Public Schs.*, 713 Fed. Appx. 666, 667 (9th Cir. 2018) (citing 20 U.S.C. § 1412(a)(3)(A)).

supports." (*Id.* at 489.) She awarded A.B.C.'s parents reimbursement of $41,600.00[5] in tuition for A.B.C.'s attendance at New Vista during the 2014-2015 and 2015-2016 school years. (*Id.* at 491.) She denied a request for transportation reimbursement, writing that although A.C. "testified that it was 30 miles round-trip mileage to New Vista, no evidence was presented to determine how many days [A.B.C.] actually attended school." (*Id.*)

A.B.C. and her father A.C. timely appealed the decision to this Court. (*See* Compl.) They seek a determination that Administrative Law Judge Pasewark erred in finding the June 2016 IEP provided A.B.C. a FAPE. (*Id.* ¶ 33.) They further appeal the denial of reimbursement of transportation costs. (*Id.* ¶ 34.) Plaintiffs also seek attorneys' fees; the Court deferred any consideration on this issue until after the Court's administrative review.[6] (Scheduling Order, Doc. 19.)

### III.  STANDARD OF REVIEW

In reviewing an administrative decision under the IDEA, a district court reviews the administrative proceeding records, hears additional evidence, and grants relief based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). "This modified *de novo* standard requires the Court to give the administrative proceedings 'due weight.'" *A.R. ex rel. Reese v. Santa Monica Malibu Sch. Dist.*, No. 2:12–cv–4812–ODW (SHx), 2013 WL 4052437, at *2 (C.D. Cal. Aug. 21, 2013) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir.1995)).

"[C]ourts must not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (quoting *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206

---

[5] This award was conditional on A.B.C.'s parents presenting additional evidence proving they actually paid this amount for A.B.C. to attend New Vista for the 2014-2015 and 2015-2016 school years. (Administrative Record at 491.)

[6] Plaintiffs briefed the issue of attorneys' fees in their Opening Brief. The Court granted the parties' stipulation to strike any arguments on that issue. (Order, Doc. 47.)

(1982)). A court may exercise its discretion to determine what weight to give the hearing officer's findings; the "amount of deference accorded the hearing officer's finding increases where they are 'thorough and careful.'" *Wartenberg*, 59 F.3d at 891 (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)). A hearing officer's decision is considered thorough and careful when "the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B., ex rel. F.B.v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (quoting *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006)).

Furthermore, "[i]n an action for judicial review of an administrative decision, the burden of persuasion rests with the party challenging the ALJ's decision." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009). Accordingly, Plaintiffs bear the burden of showing that the ALJ's decision does not deserve deference, that the preponderance of the evidence shows that the District's IEP did not provide a FAPE, and that the ALJ erred in not awarding reimbursement of travel costs.

## IV. DISCUSSION

### A. Whether the June 2016 IEP Denied A.B.C. a FAPE

Plaintiffs assert that the June 2016 IEP proposed by the District failed to include appropriate services in all areas of need and thereby denied A.B.C. a FAPE. (Plaintiffs' Opening Brief at 14–16.) Specifically, Plaintiffs argue that the IEP's only offer of specific behavioral services was once per week counseling and that it lacked any specific social skills instruction or behavior plan. (*Id.* at 14–15.) Further, Plaintiffs argue that ALJ Pasewark's decision "does not merit deference" because it "adopted the District's general assertion that Bridges would meet A.B.C.'s needs" despite the testimony of Juhi Sharma, the director of student services at New Vista, that she did not believe Bridges was appropriate for A.B.C. (*Id.* at 15–16.)

A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188–89. States must provide a "basic floor of opportunity" to disabled students, but Congress "did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful." *Id.* at 192, 201. The level of instruction provided must be "reasonably calculated to permit advancement through the general curriculum." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1000 (2017). "[E]very child should have the chance to meet challenging objectives." *Id*. A court's review of an administrative decision "must focus primarily on the District's proposed placement, not on the alternative that the family preferred." *Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987). The Ninth Circuit has explained that the IDEA prefers "that children with disabilities be educated in regular classes with children who are not disabled." *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. By & Through Holland*, 14 F.3d 1398, 1405 (9th Cir. 1994).

ALJ Pasewark concluded that the District's offer of placement at Bridges was appropriate, as it was "a highly structured therapeutic program that could provide the small, structured classroom environment and emotional support all of the parties correctly insisted [A.B.C.] required." (Administrative Record at 488.) She found that "Bridges could easily implement [A.B.C.'s] goals," noting that the program provided "social skills training embedded in its daily program" and that its staff "included both a school psychologist and intervention specialist, to provide hands-on implementation of [A.B.C.]'s counseling service, and work on her behavioral/emotional goals." (*Id.*) She further noted that the "comparison of Bridges to New Vista is not relevant in determining whether [A.B.C.] was offered a FAPE in the June 2016 IEP." (*Id*. at 489.)

The Court concludes that ALJ Pasewark's decision that Bridges provides an

appropriate education merits deference. The decision was thorough, careful, and extensive. *See Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1467 (9th Cir.1996). It provides lengthy discussions of each issue and supports conclusions with relevant factual and legal analysis – all in exhaustive detail. Thus, ALJ Pasewark's "decision is entitled to substantial weight." *Id.*

Plaintiffs argue that ALJ Pasewark did not sufficiently credit Juhi Sharma's testimony that Bridges was inappropriate for A.B.C. (Plaintiff's Opening Brief at 16.) Yet, ALJ Pasewark's reasoning was sound. While Sharma "found fault with the social behavior and expression goals as there appeared to be no social skills classes at Bridges" and thought that A.B.C. needed a one-on-one aide, she "was unfamiliar with Bridges, its program, supports available there, and staff qualifications for implementing the IEP." (Administrative Record at 476.) Thus, "[s]he was unaware that social skills were embedded in the daily classroom structure at Bridges and were overseen by the school psychologist and invention specialist. Nevertheless, without knowing more, Ms. Sharma thought Bridges was an inappropriate placement for [A.B.C.]." (*Id.* at 476–77.) Considering that Sharma had never seen the Bridges Program and admitted that she could not testify about it (*id.* at 608:8–15), the Court finds that it was reasonable that ALJ Pasewark did not attribute more weight to her opinions regarding deficiencies in the Bridges Program.

Relatedly, it was reasonable for ALJ Pasewark to credit the District's witnesses who participated in the formulation of A.B.C.'s June 2016 IEP and were familiar with the support offered in the Bridges Program. For example, while Plaintiffs criticize the embedded social skills program and lack of a constant one-on-one aide at Bridges, Dr. Thurston, a witness for the District, "noted that during her observation at New Vista, nothing much was done when Student became frustrated and non-compliant. Staff at Bridges could have immediately addressed [A.B.C.'s] emotional needs in class." (*Id.* at 479.) Thus, there was testimony in the record that Bridges' embedded skills program would specifically address some of A.B.C.'s

9

behavioral issues. Furthermore, the embedded skills program was in addition to the weekly 45-minute individual counseling services with a therapist and the availability of a school psychologist to work through A.B.C's behavioral and emotional issues. (*See* Thurston Decl. ¶¶ 20–21.) Thus, the familiarity that the District's witnesses had with the Bridges Program and their testimony regarding the specific benefits it would provide to A.B.C. made it reasonable for ALJ Pasewark to find that Bridges provided A.B.C. with a FAPE.

Plaintiffs also argue in their Response Brief that the IEP was too vague in describing the services at Bridges and thus the offer of placement there was not a FAPE. (Plaintiffs' Response Brief at 7.) They argue that the June 2016 IEP "could not be monitored" by A.B.C.'s parents because it did not specify the "anticipated frequency, location, and duration" of the services to be offered. (Plaintiff's Response Brief at 9.) First, Plaintiffs did not raise this issue before ALJ Pasewark or in any previous filings before this Court. (*See* Plaintiff's Closing Brief at 106–111 of the Administrative Record.) In the case on which Plaintiffs rely, *M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189 (9th Cir. 2017), there was a significant dispute at the administrative hearing over the specificity of the IEP. *See id.* at 1196.

The Court will assume without deciding that Plaintiffs have not waived the argument by failing to raise it either before the ALJ or in their opening brief. Nonetheless, the Court finds that the June 2016 IEP does lay out the "anticipated frequency, location, and duration" of the services to be offered. 20 U.S.C § 1414(d)(1)(A)(i)(VII). The IEP states that A.B.C. will start with six classes every day in the Bridges program for a total of 5.12 hours per day,[7] and that each session

---

[7] Plaintiffs claim that the IEP document lists the 5.12 hour sessions as occurring 6 times per day, which is impossible. (Plaintiff's Response Brief at 9 n.1.) First, this "impossibility" was apparent from the face of the IEP, and if Plaintiffs believed it to be anything more than a typographical error, they could easily have raised the issue below, as was done in *Antelope Valley*. *See* 858 F.3d at 1196. Further, while in *Antelope Valley* the Ninth Circuit found that an error regarding the amount of time a student would receive a service denied the student a FAPE, there the IEP said that the student would receive 240 minutes of services monthly when it was supposed to be 240 minutes *weekly*. *See*

will include the aforementioned skills program "embedded into the daily structure," small class structure, and routines and schedules to assist A.B.C. in learning to manage her own behavior and academic progress. (Administrative Record at 367.) Further, the IEP describes the 45-minute per week individual counseling service. (*Id.*) Moreover, A.B.C.'s parents observed the Bridges Program themselves, meaning that they had first-hand knowledge of what the services described in the IEP looked like in practice.

Finally, Plaintiffs contend in their Response Brief that the June 2016 IEP was not a FAPE because "recent case law" establishes that "IEP teams must determine whether supplemental aids and services are necessary" when a student transitions into a public school environment. (Plaintiff's Response Brief at 11.) First, as Plaintiffs acknowledge, the Ninth Circuit opinion upon which they rely has been withdrawn. *See R.E.B. v. State of Hawaii Dep't of Educ.*, 870 F.3d 1025 (9th Cir. 2017), *withdrawn*, 886 F.3d 1288 (2018). Moreover, Plaintiffs failed to raise in any issues with the absence of a transition plan[8] addressing A.B.C.'s move from the private New Vista School to the public Bridges Program before the ALJ or in any previous filings before this Court. Regardless, the Bridges Program was *not* part of the general public school campus – rather it was a separate and small structured class environment specifically designed for students, like A.B.C., who have significant behavioral and social problems. Thus, the transition concerns discussed in *R.E.B.*, which related to transition into general public school kindergarten, are not present here. *See R.E.B.*, 970 F.3d at 1027–28.

Accordingly, the Court finds Plaintiffs have not met their burden to prove by

---

*id*. Thus, while the parents' confusion in *Antelope Valley* may have been legitimate, here the Court finds that the only reasonable interpretation of the document is that A.B.C was to attend 6 classes every day at the Bridges Program for a total of 5.12 hours per day. (Administrative Record at 367.) Indeed, there is no indication that Plaintiffs ever misunderstood the IEP's offer of services.

[8] There is a transition plan in the IEP that discusses A.B.C.'s transition from high school to college and eventually employment. (Administrative Record at 370.) ALJ Pasewark noted that Plaintiffs "did not contest [A.B.C.'s] individualized transition plan." (*Id.* at 478.)

a preponderance of the evidence that the ALJ erred in finding that the June 2016 IEP offered A.B.C. a fair and appropriate public education.

### B. Whether ALJ Pasewark Erred in Denying Reimbursement of Transportation Costs

Plaintiffs contend that ALJ Pasewark incorrectly denied their requested remedy of transportation costs for the 2014-2015 and 2015-2016 school years. (Plaintiffs' Opening Brief at 16–17.) Specifically, they contend that ALJ Pasewark should have requested school attendance records to substantiate the specific amount due to Plaintiffs rather than summarily denying the request. (*Id*. at 17.)

"The language and spirit of the IDEA encompass reimbursement for reasonable transportation" expenses. *Union Sch. Dist.*, 15 F.3d at 1528.

The Court concludes that ALJ Pasewark's denial of reimbursement of transportation costs was in error. Importantly, ALJ Pasewark determined that A.B.C. had been denied a FAPE for the 2014-2015 and 2015-2016 school years, and she awarded tuition costs as a remedy. (Administrative Record at 491.) Further, the ALJ found that A.B.C. attended New Vista during the relevant time period and that it was 30 miles round-trip to New Vista from A.B.C.'s home. (*Id.*) Her denial of transportation costs was based solely on Plaintiffs' alleged failure to present evidence of the number of days A.B.C. actually attended New Vista. (*Id.*) In contrast, with regards to tuition reimbursement, ALJ Pasewark allowed Plaintiffs to provide documentation to the District to substantiate the total amount to be reimbursed. (*Id.*) Furthermore, Plaintiffs *did* submit some evidence to determine how many school days A.B.C. attended at New Vista, at least for the 2015-2016 school year. (*Id.* at 401.) Admittedly, the document is not entirely legible, and some of the symbols that appear on the calendar are not explained by the legend. Nonetheless, the ALJ's decision fails to address it.

Thus, because (1) Plaintiffs are entitled to reimbursement of travel costs; (2) there is no dispute that travel costs were incurred; and (3) the issue could have been

resolved through a review of school records, or at least a clarification of the records submitted; the Court concludes that the ALJ's decision to deny reimbursement was in error. Accordingly, the Court REMANDS to the ALJ to allow Plaintiffs to submit school records to verify A.B.C.'s attendance at New Vista in the 2014-15 and 2015-16 school years for the purpose of reimbursement of travel costs.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision as to its finding that the June 2016 IEP was a FAPE, but REMANDS for the limited purpose of the submission of A.B.C.'s attendance records at New Vista in the 2014-15 and 2015-16 school years, and the determination of appropriate travel expense reimbursement for those years.

**IT IS SO ORDERED.**

**DATED: October 30, 2018**

_____
The Hon. Josephine L. Staton
United States District Judge